UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

HARUTYUN ASRYAN,

             Petitioner,

             v.

FERETI SEMAIA, Warden, Adelanto West ICE Processing Center, et al.,

             Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 5:26-cv-03290-DTB

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

**I.**

**PROCEEDINGS**

On June 14, 2026, petitioner Harutyun Asryan ("Petitioner"), represented by counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, ("Petition") (Docket No. 1 at 1-15),[1] accompanied by exhibits (id. at 16-99). The Petition alleges the following claims for habeas relief: (1) Petitioner's detention violates his right to procedural due process under the Fifth Amendment; and (2) Petitioner's detention violates his right to substantive due process under the Fifth

---

[1]    For the parties' pleadings, the Court cites to the CM/ECF pagination at the top of each page.

1

Amendment. (Id. at 6-10). The Petitioner seeks, among other things, Petitioner's immediate release from custody. (Id. at 10-13, 14-15).

On June 22, 2026 (pursuant to General Order 26-05's expedited briefing schedule, see Docket No. 5), Respondents filed an Answer to the Petition ("Answer") (Docket No. 8), accompanied by the Declaration of Gerardo Villa ("Villa Decl.") (Docket No. 8-1) and the Declaration of S. Desmond Jui (Docket No. 8-2) with attached exhibits (Docket Nos. 8-3 through 8-5). In the Answer, Respondents contend that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c) based on his arrests for grand theft in violation of California Penal Code ("CPC") § 487(a) and for conspiracy to commit a crime in violation of CPC § 182(a). (Docket No. 8 at 2-4).

On June 23, 2026, Petitioner filed a Reply. (Docket No. 9).

Thus, this matter is now ready for decision. For the reasons set forth below, the Court grants the Petition.

## II.

## BACKGROUND

Petitioner is a native and citizen of Armenia. (Petition at ¶ 22; Villa Decl. at ¶ 4). On December 29, 2022, Petitioner entered the United States at or near Otay Mesa, California without being inspected or paroled by an immigration official. (Petition at ¶ 28; id. at 22; Villa Decl. at ¶ 5).

On January 3, 2023, the Department of Homeland Security ("DHS") issued Petitioner an Order of Release on Recognizance, containing numerous conditions, including that he "must not violate any local, state or Feder[a]l laws or ordinance," and giving him notice that his "[f]ailure to comply with the conditions of this order may result in revocation of [his] release and [his] arrest and detention by Immigration and Customs Enforcement," and released Petitioner into the general population as an alternative to detention. (Villa Decl. at ¶¶ 5-6; Docket No. 8-3).

On the same date, DHS issued Petitioner a Notice to Appear, charging Petitioner as subject to removal from the United States pursuant to Immigration and Nationality Act § 212(a)(6)(A)(i) as a "alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." (Petition at ¶ 29; id. at 21-23; Villa Decl. at ¶ 7; Docket No. 8-4 at 2-4).

On June 20, 2024, and Immigration Judge ordered Petitioner's removal to Armenia. Petitioner appealed the Immigration Judge's decision to the Board of Immigration Appeals ("BIA"), and the case was remanded to the Immigration Judge. (Villa Decl. at ¶ 8).

On an unspecified date, Petitioner applied for asylum and withholding of removal. (Petition at ¶ 32; id. at 37). On March 27, 2025, an Immigration Judge denied Petitioner's applications for relief from removal and ordered Petitioner's removal to Armenia. (Id. at ¶ 33). Petitioner appealed the Immigration Judge's decision to the BIA; on February 26, 2026, the BIA sustained the appeal, vacated the Immigration Judge's decision, and remanded the case to the Immigration Judge. (Id. at ¶¶ 34-38, 73-77; id. at 37-40; Villa Decl. at ¶ 9).

Petitioner's removal proceedings remain pending, and Petitioner does not have a final order of removal. (Petition at ¶¶ 30-31, 39-40, 71-72. 77-78).

On March 6, 2026, Petitioner was arrested for grand theft of money/labor/property in violation of CPC 487(a) and conspiracy to commit crime in violation of CPC 182(a)(1). (Villa Decl. at ¶ 11; Docket No. 8-5 at 4).[2]

On June 9, 2026, Petitioner appeared for his scheduled check-in at the Los Angeles Immigration and Customs Enforcement ("ICE") office, when he was

---

[2]    While the March 6, 2026 arrest date is taken from the Declaration (see Docket No. 8-1 at 3), DHS's "Record of Deportable Alien/Inadmissible Alien" states the arrest date as February 17, 2026 (see Docket No. 8-5 at 4).

3

detained.  (Petition at ¶¶ 46-49, 66; Villa Decl. at ¶ 13 Docket No. 8-5 at 2-3). Petitioner admitted to ICE that on March 6, 2026, he was arrested for grand theft and conspiracy.  (Villa Decl. at ¶ 13; Docket No. 8-5 at 4).

Petitioner was detained without being afforded meaningful pre-deprivation notice, an opportunity to be heard, and a meaningful individualized custody determination.  (Petition at ¶¶ 80-82).

As of June 12, 2026 (more than three months after Petitioner's arrest), the Orange County Office of the District Attorney, which was reviewing Petitioner's case on April 6, 2026, has not filed charges against Petitioner.  (Petition at ¶ 51; id. at 42; Docket No. 9 at 15-18).

Prior to being detained, Petitioner lived with his wife and two children, lawfully worked to support his family as the sole provider, paid taxes, and helped his children with their daily needs.  (Petition at ¶¶ 41-45, 68-70; id. at 25).  Prior to being detained, Petitioner had continuously complied with immigration reporting requirements.  (Id. at ¶¶ 47, 67).  Petitioner's detention deprives his family of financial support and parental care.  (Id. at ¶¶ 50, 88).

Petitioner is being detained at Adelanto Detention Center in Adelanto, California.  (Petition at ¶¶ 2, 23, 49; https://locator.ice.gov/odls/#/results).

## III.

## LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law.  28

4

U.S.C. § 2241(c)(3).  Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws.  28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

Here, Petitioner has raised claims under the Due Process Clause of the Fifth Amendment, which prohibits deprivations of life, liberty, and property without due process of law.  See U.S. Const., amend. V.  These protections extend to noncitizens present in the United States.  See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (internal quotation marks omitted); Zadvydas, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings.") (internal quotation marks and brackets omitted)).  Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ."  Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990).  Indeed, the Due Process Clause provides both procedural and substantive protections.  See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two

types of government action: violations of substantive due process and procedural due process.") (internal quotation marks omitted).  To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976).  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying Mathews to due process challenge to immigration detention, and noting that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context"); López v. Wofford, Case No. 1:25-cv-01226-KES-SKO (HC), 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) (collecting cases extending Mathews "to the context of immigration detention").  Under Matthews, courts weigh the following three factors: (1) "[T]he private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."   Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

**IV.**

**DISCUSSION**

**A.**      **Habeas Relief is Warranted.**

The first claim in the Petition alleges that Petitioner's detention violates his right to procedural due process under the Fifth Amendment.  (Docket No. 1 at 6-10; see Docket No. 9 at 2-9).

According to the allegations in the Petition and the Answer, on January 3, 2023, Petitioner was released on his own recognizance, on March 6, 2026, he was

6

arrested for grand theft and conspiracy to commit crime, he complied with all of the immigration requirements, on June 9, 2026, he was detained without notice, without a hearing, and without any opportunity to contest the basis for his detention, he admitted to immigration authorities that on March 6, 2026, he was arrested for grand theft and conspiracy, and as of June 12, 2026 (more than three months after his arrest), charges have not been filed against Petitioner.   (Petition at ¶¶ 46-49, 51, 66, 80-82; id. at 42; Villa Decl. at ¶¶ 5-6, 11, 13; Docket No. 8-3; Docket No. 8-5 at 2-4; Docket No. 9 at 15-18).

1.    Procedural Due Process.

The Fifth Amendment provides that "[n]o person shall . . . be deprived of . . . liberty . . . without due process of law."  U.S. Const. amend. V.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects."  Id. at 690; see also United States v. Salerno, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.").  "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty."  Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (collecting cases).

Generally, the Due Process Clause "requires some kind of a hearing *before* the State deprives a person of liberty or property."  Zinermon v. Burch, 494 U.S. 113, 127 (1990) (emphasis in original).  As noted above, in Mathews, 424 U.S. at 335, the Supreme Court established three factors for a court to consider for purposes of determining what process is constitutionally sufficient to protect a liberty interest.

Thus, the Court considers the Mathews factors as applied to Petitioner's claim.

7

a.      Private Interest

Petitioner has developed a substantial liberty interest in remaining out of custody after being released by Respondents on his own recognizance, based on the life he built in the United States since arriving more than three years ago.  See, e.g., Tinoco v. Noem, 818 F. Supp. 3d 1141, 1152 (E.D. Cal. 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Manzanarez v. Bondi, Case No. 1:25-cv-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding that the petitioner had a private interest in remaining free from detention where "he was released on his own recognizance for over two years and complied with his [order of release on recognizance] conditions during that time"); Cruz v. Lyons, Case No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129, at *3 (C.D. Cal, Nov. 6, 2025) (finding the petitioner had a protectable liberty interest in remaining on supervised immigration release); C.A.R.V. v. Wofford, Case No. 1:25-CV-01395 JLT SKO, 2025 WL 3059549, at *10 (E.D. Cal. Nov. 1, 2025) ("As to private interest, during his approximately four years on parole, C.A.R.V. obtained permission to work, pursued gainful employment, and built a relationship with his fiancé and many others in his community.  . . .  Petitioner has a substantial private interest in being out of custody and his detention denies him that liberty interest."); López, 2025 WL 2959319, at *6 ("Petitioner had been out of custody for nearly four years, and during that time, began a life in the United States, living with her partner and complying with the terms of her release.  Her detention denies her that freedom."); Garcia v. Andrews, Case No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty.").  This "liberty is valuable and must

be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Respondents contend that Petitioner is subject to mandatory detention for his arrests for grand theft and conspiracy to commit a crime pursuant to 8 U.S.C. § 1226(c)(1)(e)(ii) ("The Attorney General shall take into custody any alien who – . . . is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any other crime that results in death or serious bodily injury to another person[.]"). (Docket No. 8 at 2-4). While § 1226(c), on its face, appears to apply to Petitioner based on his arrest for grand theft, it "does not require mandatory detention when charges are not filed." D.M. v. Warden, et al., Case No. 1:26-cv-03743-TLN-SCR, 2026 WL 1733659, at *2 (E.D. Cal. June 16, 2026) (citing to Helbrum v. Olson, Case No. 4:25-cv-00349-SHL-SBJ, 2025 WL 2840273, at *6 (S.D. Iowa Sep. 30, 2025) (noting that § 1226(c)(1)(e)(ii) "no longer requires mandatory detention when charges are resolved via acquittal or dismissal and none of the other clauses apply")).

As Petitioner argues (see Docket No. 9 at 5-6), Respondents' reliance on an arrest for which charges have not been brought (and may never be brought) (see (Petition at ¶ 51; id. at 42; Docket No. 9 at 15-18) to justify Petitioner's mandatory detention is problematic. See D.M., 2026 WL 1733659, at *1 ("Indeed, [the petitioner] attaches a Court Appearance Record for his criminal matter that shows his case has been placed on non-filed status with no next court appearance scheduled. . . . Requiring mandatory detention because of a mere arrest raises significant due process concerns."); Singh v. Chestnut, Case No. 1:26-cv-00546-DJC-AC, 2026 WL 266021, at *2 (E.D. Cal. Feb. 2, 2026) ("As [the petitioner] notes, however, requiring mandatory detention because of a mere arrest for which prosecutors concluded they

9

did not have sufficient evidence to charge [the petitioner] with a crime, raises serious due process concerns.").

Based on the absence of charges filed against Petitioner for more than three months after his arrest, the Court is not able to find that § 1226(c) is applicable to Petitioner's case or that Petitioner's liberty interest has been significantly reduced. See D.M., 2026 WL 1733659, at *2 ("Because [the petitioner's] criminal case has been placed on non-filed status, the Court is not persuaded at this juncture about the application of § 1226(c) to [the petitioner's] case.").

b.    Risk of Erroneous Deprivation

The absence of a pre-detention hearing under these circumstances presents an unacceptable risk that the government would erroneously deprive Petitioner of his liberty interest. Civil immigration detention is permissible only to prevent flight or reduce the risk of danger to the community. Zadvydas, 533 U.S. at 690-91. The government clearly did not believe Petitioner to be a risk of flight or a danger to the community when they released him on his own recognizance on January 3, 2023; otherwise, the government would not have done so. Cf. e.g., Padilla v. Bowen, Case No. 2:25-cv-10780-CAS-SK, 2025 WL 3251368, at *7 (C.D. Cal. Nov. 21, 2025); Sequen v. Albarran, Case No. 25-cv-06487-PCP, 2025 WL 2935630, at *11 (N.D. Cal. Oct. 15, 2025); Singh v. Andrews, Case No. 1:25-cv-00801-KES-SKO (HC), 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025).    There is no evidence indicating that the decision to release Petitioner was erroneous. Therefore, without a pre-deprivation hearing, there exists a significant risk of erroneous deprivation of Petitioner's liberty interest. See Fernandez v. Semaia, Case No. 5:25-cv-03412-SPG-MBK, 2026 WL 136229, at *6 (C.D. Cal. Jan. 13, 2026) ("[T]he risk of erroneous deprivation is high because [the petitioner] has been afforded no process and there is no evidence of any changed circumstances that would justify his re-detention.").

c.      Government Interest

As for the third Mathews factor, "as many other courts have recognized, there is no meaningful countervailing Government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing." Cruz, 2025 WL 4051129, at *4 (collecting cases).  Here, Respondents have not made any argument, let alone a compelling argument, as to why Petitioner should be detained without a pre-detention hearing.  Respondents did not deem Petitioner to pose either a risk of flight or a danger when they released him on his own recognizance on January 3, 2023.   Moreover, "any fiscal or administrative burden on the additional procedural safeguard of a hearing before neutral adjudicator imposes on the Government is at most minimal'[.]"  Sun v. Santa Cruz, Case No. 5:25-cv-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted).

Therefore, there is a great risk that the lack of a pre-detention process has resulted in Petitioner's unnecessary detention.  See Mourey v. Bowen, Case No. 5:25-cv-03262-WLH (DTB), 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); López, 2025 WL 2959319, at *6 ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained.").

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

11

Accordingly, the Court concludes that the government's June 9, 2026 detention of Petitioner, who has developed a significant liberty interest during his more than three years in the United States, without first providing him with notice and opportunity for a hearing before a neutral adjudicator, violated his right to procedural due process under the Fifth Amendment. [3]

## V.

## CONCLUSION

IT THEREFORE IS ORDERED that: (1) Judgment be entered granting the Petition; and (2) that a writ of habeas corpus be issued (a) requiring Respondents to immediately release Petitioner Harutyun Asryan (A# 246-567-518) from custody, subject to the same conditions that he was subject to at the time he was arrested and re-detained, (b) ordering Respondents to return all property confiscated from Petitioner during his arrest and processing into detention; (c) enjoining Respondents and their officers, agents, employees, attorneys and persons acting on their behalf in concert or in participation with them, from re-detaining Petitioner without notice and a pre-detention hearing before a neutral arbiter at which the government bears the burden of proving that Petitioner is a flight risk or danger to the community; and (d) ordering Respondents to file a status report within two (2) business days to confirm that Petitioner has been released from custody pursuant to this Order.

DATED: July 1, 2026

_____
DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE

---

[3]    The Court's determination that Petitioner is entitled to habeas relief on the first claim alleged in the Petition renders it unnecessary for the Court to address the merits of the second claim alleged in the Petition.